1816.

Boehme
vs
Aisquith.

down by the defendant according to their calls, and by the plaintiff as they were laid down at the time *Neglect* was taken up. The deposition rejected by the court went to establish how they were laid down; it was rejected, on the ground of being inconsistent with the grant. But that decision was reversed.

It will be perceived, that *Neglect* calls for no visible object. I was under the impression that the *Gleanings* in the case of *Webb and Beard*, was in the same situation; and if so, the cases would have been strictly analagous. But in the latter case, though a tree is called for, and supported by some evidence, yet, my memory leads me to believe, that in that case it was determined, that if the proof as to the tree failed, that the beginning might be ascertained by running the tracts called for without their calls —on the ground, that as they contained a double description, that that description should be received, which comported with the facts, as they existed, when the junior survey was made; for, if complete evidence existed as to the tree, the patent under which the plaintiff claimed could never have been obtained, if that fact had been disclosed to the chancellor—nor, do I presume, would the counsel who conducted the case on the part of the plaintiff, ever have brought the suit, with the previous knowledge, that the tree could be established.

It is not for me to say whether those decisions ought to have any influence with this court; that is submitted to their consideration. For my own part, I have long reflected on cases of this description, and am led to think that the opinion pronounced in *Tenant & Hambleton*, is calculated to carry into effect the intention of the contract, as it existed at the time it was made; that it is consistent with, and supported by, general principles of law, more especially that it accords with the law in operation at the period it was entered into, and is in conformity with the provisions of the act of 1781, and that it is supported by the decisions which have been adjudged on the subject. I am, therefore, of opinion, that the judgment ought to be affirmed on both exceptions.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

———————

## BOEHME vs. AISQUITH, *qui tam.*

JUNE.

APPEAL from *Baltimore* County Court. This was an action of debt brought on the 30th of September 1809, for debt. The declaration contained two counts, each demanding $450 on a corrupt agreement for a loan of $150, from the 2d of September 1805 to the 5th of October 1805, for which the lender was to receive $90, and for securing the payment thereof, the borrower gave a promissory note, endorsed by him to the lender, for 240 dollars payable in 30 days Verdict, on *nil debt* pleaded, that the defendant owed the said sum of 450 dollars—judgment entered for 450 dollars debt, and 900 dolls. damages and costs; to be released on payment of 450 dollars, with interest, &c. O. appeal judgment *reversed.*

*Quere,* Whether a *qui tam* action will lie where the usurious loan is for a less time than *one whole year?*

Whether the judgment to be entered on a verdict in such an action is embraced by the act of 1809, ch. 153, s 4, for the amendment of judicial proceedings? *Quere.*

A *qui tam* action was brought founded on the act of 1704, ch 69, against usury, for $450

$450. The declaration contained two counts, each demanding $450, and setting out the promissory note hereafter mentioned, and a corrupt agreement between the defendant, (now appellant,) and the plaintiff, who sued, &c. (now appellee,) for a loan of $150 by the former to the latter, from the 2d of September 1805 to the 5th of October 1805, for which the former was then to have $90; and for securing the payment as well of the $150 as of the $90, the plaintiff endorsed the said note to the defendant. The defendant pleaded *nil debet*, and the act of limitations. To these pleas there were the general replications, and issues were joined. At the trial the plaintiff gave in evidence, that the defendant, at the request of *Edward Aisquith*, on the 2d day of September 1805, paid him the sum of $150, for the following promissory note:

"$240.	*Baltimore*, September 2d, 1805.

Thirty days after date I promise to pay *Edward Aisquith*, or order, two hundred and forty dollars, for value received.	*John Neale*."

Endorsed in his own hand writing, *Edward Aisquith*. That after the time appointed for the payment of the note, the same being unpaid, the defendant on the 30th of October in the same year, passed it to *Thomas Baltzell*, and received from him a quantity of goods, which at the usual selling price, amounted to the sum of $240, and agreed to pay the said sum of $240 to *Baltzell*, if he should not recover the amount of the note from *Aisquith*, or from *Neale*, the drawer. That a suit was commenced by *Baltzell* against *Aisquith* on the said note, and judgment was obtained against him for the amount of the sum of money mentioned in the note, with interest and costs; and that a *fieri facias* issued on the judgment, and was delivered to the sheriff of *Baltimore* county on the 22d of July 1808, returnable to October term in the same year. That the sheriff, on the receipt of the *fieri facias*, agreed to become answerable for the payment of the amount of the judgment, but did not actually pay the same until the month of November following; nor did he receive payment thereof from *Aisquith* until after he (the sheriff) had actually paid the same. The defendant then prayed the court to direct the jury, that the plaintiff was not entitled to recover, even although the jury should believe the facts above stated. This direction the Court [*Nicholson*, Ch. J.] refused to give. The defendant excepted. Verdict, that the defendant owed the said sum of $450, and that he was guilty, &c. within one year, &c. Judgment entered for the said sum of $450, current money debt, and the sum of $900 current money damages, (being the damages laid in the declaration,) and costs; to be released on payment of $450, with interest, &c. From which judgment the defendant appealed to this court.

The cause was argued before BUCHANAN, EARLE, JOHNSON, and MARTIN, J.

*W. Dorsey*, for the Appellant. 1. Admitting the proof to be that there was a usurious lending, yet it is not embraced by the act of 1704, *ch.* 69. The *first* section of that act contains a general prohibition, and declares what shall be usury. The *second* section declares that all bonds, &c. made upon or for usury shall be void; and the *third* section, (which is the section on which the plaintiff founds the demand for treble the sum loaned) declares "that all and every person and persons who shall upon any contract to be made, take," &c. "by means of any corrupt bargain, loan," &c "for the forbearance or giving day of payment for *one whole year*, above the sum of money aforesaid," (that is, £6 for £100,) "shall forfeit and lose, for every such offence, the treble value of the money so lent, one half to the Queen, and the other half to him that shall sue for the same, to be recovered by action of debt," &c. It is clear, that as the usurious interest claimed was for a shorter time than *one whole year*, the action could not lie. An indictment might lie, but not a penal action for treble the value. Penal statutes must be construed *strictly*. 1 *Blk. Com.* 88, (and *Christian's* notes.)

2. There was not sufficient proof of the usurious transaction. If the defendant had sued the plaintiff, he could not have recovered more than $150. Nor could *Baltzell* have recovered more than that sum. He stood in the same situation as the defendant did. There is nothing from which usury can be inferred. A man may purchase a note for less than the amount, and not be guilty of usury. But how much he might recover on it is another question.

3. The writ demands a debt of $450. The declaration has two counts, each for $450. Here then are demands for $900, and a recovery for only $450. *Compton vs. Smith, Yelv.* 5. The judgment is for $450 debt, and $900 damages and costs, to be released on payment of $450, with interest, &c. This judgment is erroneous, and is not embraced by the act of 1809, *ch.* 153, s. 4, which says that where a verdict shall be given, the court shall enter such a judgment upon the verdict as will carry an interest, &c. until payment of the *damages*, assessed by the jury giving such verdict. This is not the kind of action embraced by that act, being a *qui tam* action in which the state is concerned, and is in the nature of a prosecution on the part of the state; and here no damages were assessed by the jury—they merely find that the defendant owed the debt demanded.

JUDGMENT REVERSED.